IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL ETZEL, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

HOOTERS OF AMERICA, LLC,

      Defendant.

CIVIL ACTION FILE NO.
1:15-cv-01055-LMM

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS AND MEMORANDUM OF LAW IN SUPPORT

Defendant Hooters of America, LLC ("HOA") respectfully moves to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) on the ground that Plaintiff lacks subject matter jurisdiction to litigate his case before this court. In the alternative, because it is clear from the face of the Complaint that the class cannot be certified, HOA moves to strike Plaintiff's class allegations pursuant to Rule 12(f). HOA offers the following memorandum in support of its motions.[1]

---

[1] HOA notes that the declaration offered in support of or referenced in this Motion only speaks to the Motion to Dismiss portion of this briefing; the Motion to Strike does not ask for any consideration of matters outside the pleadings.

# I.    INTRODUCTION

Plaintiff Michael Etzel ("Plaintiff") filed his Class Action Complaint ("Complaint") on April 8, 2015, alleging that HOA violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending one text message to his cell phone on January 28, 2015, after he claims to have withdrawn his prior consent.  Plaintiff claims statutory damages of $500 or $1,500 for this text message, both for himself and for a putative nationwide class.  *See* Compl., ¶¶ 9, 15.  However, although Plaintiff has alleged that HOA has committed a procedural statutory violation of the TCPA, he has not alleged any resultant concrete and particularized harm that could form an injury-in-fact.  The recent Supreme Court decision in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) makes clear that Plaintiff must have suffered a concrete and particularized injury in order to have Article III standing to pursue his claims under the TCPA; because Plaintiff does not allege such necessary jurisdictional facts, the Complaint should thus be dismissed.  *See* Part III.A.

In the alternative, in the event Plaintiff's claims are not dismissed, it is clear from the face of the Complaint that Plaintiff will be unable to certify his defined class; thus, his class allegations should be stricken.  *See* Part III.B.  In order for certification to be proper, Plaintiff must first demonstrate that "there are questions

of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)), including whether or not class members have standing to proceed with their claims. First, to meet this requirement, he must establish that each proposed class member has suffered the same injury-in-fact; however, the *Spokeo* Court's determination that a concrete and particularized harm is required to establish standing to bring claims under statutes such as the TCPA means that individualized, fact-dependent inquiries are required to determine whether each proposed class member was harmed by the January 28, 2015 text message. This problem is so obvious from the face of the Complaint (*see* Part III.B.1) that the class allegations should be stricken, even if Plaintiff himself has standing to proceed with his claims (which HOA believes is not the case). And second, in any case, the class – defined only to include persons who did not provide prior express consent – is an improper fail-safe class, which too requires that the class allegations be struck. *See* Part III.B.2.

HOA explains these points in further detail below.

## II.     BACKGROUND AND PROCEDURAL HISTORY

As HOA explained when it filed its predecessor motion, HOA never sent unsolicited text messages out to the general public in order to market its goods or services. *See* 6/3/15 Declaration of Claudia Levitas ("Levitas Decl."), ¶ 5 (re-filed in conjunction with this Motion; also filed at Dkt. No. 12-2). There is only one

way to receive a text from HOA – by affirmatively contacting HOA and asking that text messages be sent. *Id., ¶* 4. Specifically, in 2008, HOA opened a members-only text program for which interested persons could sign up to receive offers, coupons, and local Hooters store notices via text message: the mClub. *Id., ¶* 3.

On December 31, 2014, HOA moved to a new vendor to handle its text club program. *Id.*, ¶ 6. An initial text message from the new vendor was sent on January 28, 2015 to the list of numbers that HOA believed to be its current mClub membership list in order to inform mClub members that messages would now come from a different short code. *See id.,* ¶ 7. Plaintiff alleges that he is one of the persons who received that text message, which reads as follows:

> Hooters Fans: Our mClub has moved! Don't worry, you'll still receive exclusive news, just from a new number. Reply STOP to unsubscribe. Msg&Data Rates may apply.

*Id.* at ¶ 7; *see also* Compl., ¶ 2. Although Plaintiff concedes that at one point he had opted-in to HOA's membership program via short code to receive text message communications from HOA, he asserts that he had left the program before January 28, 2015 by sending a "STOP" message to the previous short code number. *See* Compl., ¶ 25.

Plaintiff has filed a class action claim under the TCPA on behalf of the following proposed class:

> [a]ll persons in the United States of America (including its Territories and the District of Columbia) who were sent, without prior express written consent, to their cellular telephone numbers, at least one text message on or about January 28, 2015 which marketed and/or advertised the Hooters' mClub, or Hooters services, products, goods (the "Class").

*Id.*, ¶ 46.  Plaintiff seeks for himself and on behalf of the putative class statutory damages plus an injunction against further text messages.  *Id.*, ¶¶ 59-60, 69. [2]

Tellingly, Plaintiff's complaint does not explain how, if at all, Plaintiff was harmed by the alleged receipt of the text message – only that he suffered some unspecified injury.  *Id.*, ¶ 45.  Nor does Plaintiff seek compensatory damages for any actual harm.  Regardless, upon being served with his lawsuit, and to resolve Plaintiff's dispute, the next day HOA tendered a check to Plaintiff in the amount of $1,501.00, which exceeds the available statutory damages for the single text message he claims violated the TCPA.  *See* Levitas Decl., ¶¶ 13-14 & Ex. 2.  On April 21, 2015, Plaintiff (or his counsel) voided the $1,501.00 and mailed it back

---

[2] While not relevant to this Motion, HOA denies Plaintiff's claims that the text message was sent in violation of the TCPA.  As just one reason that Plaintiff's TCPA claims will fail, the systems used to send the message are not capable of randomly/sequentially generating and dialing numbers, and are thus not Automatic Telephone Dialing Systems as defined in the TCPA that would have required prior express consent from recipients of text messages.

to HOA, uninterested in accepting full recovery for his own allegations. *Id.*, ¶¶ 16-17 & Ex. 3.

On June 3, 2015, HOA filed its Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(h)(3). HOA simultaneously filed its Motion to Stay (Dkt. No. 13) pending the U.S. Supreme Court's review of *Campbell-Ewald v. Gomez,* 768 F.3d 871 (9th Cir. 2014) and *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014).[3] After briefing and a telephonic hearing, on June 26, 2015, the Court entered an Order staying the action pending the Supreme Court's resolution of *Spokeo* and *Campbell-Ewald.* Dkt. No. 17.

Relevant to this Motion, the Court decided *Spokeo* on May 16, 2016. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). HOA offered Plaintiff the opportunity to amend his Complaint so as to include injury-in-fact allegations during negotiations regarding the joint proposed Scheduling Order. However, Plaintiff's counsel confirmed that Plaintiff was not interested in amending the

---

[3] *Campbell-Ewald* addressed whether a Rule 68 offer of judgment could moot a plaintiff's claims. Question Presented, *Campbell-Ewald v. Gomez*, No. 13-55486, 136 S.Ct. 663 (U.S. May 18, 2015). Meanwhile, *Spokeo* presented the question of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Question Presented, *Spokeo, Inc. v. Robins*, No. 13-1339, 135 S.Ct. 1892 (U.S. April 27, 2015).

Complaint to allege a concrete and particularized injury, even knowing that HOA would then bring this Motion.

On June 17, 2016, the Court adopted the parties' proposed Scheduling Order and Case Management Order, allowing HOA until June 30, 2016 to respond to the Complaint.  Dkt. No. 31.   HOA files this Motion as its response to that Complaint.

## III.   LEGAL ARGUMENT

### A.   *Spokeo* Verifies That This Court Lacks Subject Matter Jurisdiction Over Plaintiff, And Should Dismiss The Complaint Accordingly.

Federal Rule of Civil Procedure 12(b)(1) permits a party to assert by motion the defense of lack of subject-matter jurisdiction, and Rule 12(h)(3) requires the Court to dismiss an action if subject-matter jurisdiction is lacking.  *See id.; see also D.R. ex rel. Igles v. Grant*, 770 F.Supp.2d 1337, 1341 (M.D. Ga. 2011).  Once such a defense is raised, Plaintiff bears the burden of demonstrating that the Court has jurisdiction in this case.  *See Lamb v. Charlotte Cty*., 429 F.Supp.2d 1302, 1305 (M.D. Fla. 2006).

For this Court to have jurisdiction, Plaintiff must establish that he has standing under Article III to seek redress in federal court.  As further detailed below, and as the Supreme Court has made clear in its recent *Spokeo* decision, Plaintiff's Complaint fails because he has not alleged (nor can he) an injury-in-fact that is fairly traceable to the challenged conduct.

1. **This Court Lacks Subject Matter Jurisdiction Because Plaintiff Has Not Alleged Any Injury-In-Fact Sufficient To Satisfy The Requirements For Article III Standing.**

"Article III, §2, of the Constitution limits the jurisdiction of federal courts to Cases and Controversies, which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (citation and internal quotation marks omitted). Thus, Federal courts are reserved for litigants who claim an actual injury. The Supreme Court's decision in *Spokeo, Inc. v. Robins* reiterated that three key elements form the "irreducible constitutional minimum" of standing. A plaintiff must have (1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547. Furthermore, the plaintiff bears the burden of establishing standing, and in order to meet this burden at the pleading stage a "plaintiff must 'clearly . . . allege <u>facts</u> demonstrating' each element" of standing. *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (emphasis added). *Spokeo* dealt primarily with the "injury-in-fact" requirement, the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547.

"To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Court in *Spokeo* emphasized that the "concrete" and "particularized" prongs of injury-in-fact are distinct and separate concepts. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.*, at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U. S. at 560, n. 1). In differentiating the two requirements, the Court stated that a " 'concrete' injury must be 'de facto'; that is, it must actually exist." (citing Black's Law Dictionary 479 (9th ed. 2009)). At its heart, a "concrete" injury must be "real" and not "abstract." *Id.*

Importantly, what *Spokeo* found in light of these considerations is that the fact that the Congress may have created a statutory cause of action is not enough to create standing. As the Supreme Court observed, "it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc.*, 136 S. Ct. at 1548-49. *See id.* at 1549 (a plaintiff simply "cannot satisfy the demands of Article III by alleging a bare procedural violation."). Here, Plaintiff does not assert any injury-in-fact or seek compensatory damages for any actual harm, instead relying on a claim of statutory damages for the single text message he claims to have

received on January 28, 2015. However, a statutory damage ***does not by itself*** meet the standing requirements to invoke jurisdiction of the Federal courts, as the *Spokeo* Court explained.

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. *See Summers v. Earth Island Inst.*, 555 U. S. 488, 496, 129 S. Ct. 1142, 1151 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing"); see also *Lujan*, *supra*, at 572, 112 S. Ct. 2130, 119 L. Ed. 2d 351."

*Spokeo,* 136 S. Ct. at 1549. The "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers*, 555 U.S. at 497.

Here, the Complaint is devoid of any allegation of an injury-in-fact that is both concrete and particularized to Plaintiff – which, as the Supreme Court explained, is necessary to maintain an action under Article III of the U.S. Constitution. *See Spokeo*, 136 S. Ct. at 1549. Rather than identifying any injuries that "actually exist" and that affect Plaintiff "in a personal and individual way," (*id.* at 1548), Plaintiff asserts a bare procedural violation of the TCPA – that he

received a lone text message after the withdrawal of his consent. The Complaint contains a single, vague, generalized allegation that the text message "injured Plaintiff and other members of the class[.]" *See* Compl., ¶ 45. However, without anything more, Plaintiff's Complaint fails to allege requisite facts to support the claim that he suffered a "real" injury that "actually exists." *Spokeo, Inc.*, 136 S. Ct. at 1548.

Simply put, Plaintiff has failed to allege facts sufficient to demonstrate that he has been injured-in-fact, and thus he lacks standing to bring this action. That means the Court lacks jurisdiction to hear his claims, and should dismiss the Complaint accordingly.

2. **A Bare Claim That Plaintiff's Privacy Was Somehow Violated By Receipt Of The Single Text Message Cannot, By Itself, Meet The Injury-In-Fact Requirement.**

To the extent Plaintiff may now seek in opposition to argue that he suffered some unalleged "privacy violation," it must be noted that while Congress' judgment is "instructive and important" in determining the concreteness of an intangible harm for Article III standing purposes, and while a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact[,]" (*id.*), Plaintiff would need to allege specifically how the alleged autodialing of the text message harmed him. *Id.*

Indeed, it is not enough to make some amorphous claim of invasion of privacy; courts throughout the country have consistently determined that such generalized claims of privacy-related injury do not support the concrete injury requirement under Article III. *See, e.g., Khan v. Children's National Health System*, No. CV TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (applying *Spokeo* to conclude that plaintiff lacked standing because she "failed to connect the alleged statutory and common law violations to a concrete harm"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n. 5 (D. Nev. 2015) ("Even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amount to a concrete and particularized injury."); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp.2d 299, 327 (E.D.N.Y. 2005) (plaintiffs alleged loss of privacy resulting from airline improperly transferring customers' personal information to third-party data mining company but failed to allege facts sufficient to show injury); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14 (D.D.C. 2014) (plaintiffs' allegations that their privacy had been invaded were insufficient to demonstrate "injury in fact" for purposes of Article III standing). [4]

---

[4] A handful of courts that have addressed the application of the requirements for standing laid out in *Spokeo* to claims brought under the TCPA have found that repeated telephone calls may confer Article III standing. One court found

Plaintiff's Complaint simply does not and cannot allege any harm, let alone a concrete (i.e., real) harm stemming from the single text message that is sufficient to show Plaintiff has suffered an injury-in-fact. Instead, Plaintiff claims that HOA sent him a text message via use of an ATDS, without his prior consent, and that such alleged conduct violates the TCPA (*see* Compl., ¶¶ 1-2, 5). Plaintiff concedes that his telephone number is one that he had provided to HOA at an earlier date when he enrolled in the opt-in text messaging program. *Id.*, ¶ 25. There is no allegation in the Complaint (nor could there be) that Plaintiff's telephone number was randomly or sequentially generated and dialed by an ATDS; similarly, there is no allegation that the use of an ATDS was the source of any harm in sending the single text message to Plaintiff.[5]

---

"concrete injury" had been asserted based on plaintiffs' allegations that they were "required … to waste time answering or otherwise addressing widespread robocalls." (*Booth v. Appstack, Inc., et al.,* 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016). Another court found sufficient injury existed where Plaintiffs alleged their "cell phone lines were unavailable for legitimate use during the unwanted calls." *Rogers v. Capital One Bank USA, N.A.,* Civil Action No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016). In contrast, here Plaintiff received a single text message. He does not allege that he received multiple **calls** to his telephone line that so occupied his telephone that he had to answer them in order to ensure that the line would be available for legitimate use. Indeed, there is no conceivable argument that receipt of this **text message** in his text message feed interfered in any way with the operation of Plaintiff's telephone.

[5] Indeed, knowing (as he does, from the facts alleged in his Complaint and the exhibits he attaches thereto) that HOA intended to send a text message to each of its mClub members on January 28, 2015, and was not randomly/sequentially

Accordingly, Plaintiff's Complaint does not allege facts necessary to establish his Article III standing to proceed, and this Court must dismiss the Complaint.

**B.** **In the Alternative, the Court Should Strike Plaintiff's Class Allegations.**

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." There is precedent for treating a Rule 12(f) motion to strike class allegations as a motion to deny class certification under Rule 23, which governs class actions. *Smith v. Bayer Corp. (In re Baycol Prods. Litig.),* 593 F.3d 716, 721 n. 2 (8th Cir.2010); *see also Semenko v. Wendy's Int'l, Inc.*, No. 2:12-CV-0836, 2013 WL 1568407, at *3 (W.D. Pa. Apr. 12, 2013) (citing *Bearden v. Honeywell Int'l Inc.*, 720 F.Supp.2d 932, 942 (M.D.Tenn. 2010)). Indeed, "[m]ost courts recognize that a motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification." McLaughlin on Class Actions § 3:4 (10th ed. 2013) (collecting cases); *see also Hovsepian v. Apple, Inc*., No. 08–5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009) ("[u]nder Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike

---

dialing random numbers, Plaintiff cannot in good faith amend his complaint to assert that any alleged *use of an ATDS system* is what would have caused him any concrete and particularized harm.

class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."); *Sauter v. CVS Pharmacy, Inc.,* No. 2:13-CV-846, 2014 WL 1814076, at *4 (S.D. Ohio May 7, 2014) (striking fail-safe class allegations from TCPA action).

In other words, the general rule – that a district court should defer decision on class certification issues and allow discovery – does not apply if it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23. *See, e.g., Shein v. Canon U.S.A., Inc.,* No. CV 08–07323, 2009 WL 3109721, at *8 (C.D. Cal. Sept. 22, 2009) (noting that a pre-discovery motion to strike class allegations is appropriate if "any questions of law are clear and undisputed, and ... under no set of circumstances could the claim succeed"); *Muehlbauer v. GMC,* 431 F.Supp.2d 847, 870–72 (N.D.Ill. 2006) (noting that, pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D), a court can review class allegations before discovery and strike them if they are "facially deficient and no amount of discovery can save them"); *Clark v. McDonald's Corp.,* 213 F.R.D. 198, 205 n. 3 (D.N.J. 2003) ("A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *see also John v. Nat'l Sec. Fire & Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially

apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.").

Here, there are two discrete reasons that require the class allegations be stricken.

1. **The Court Should Strike Class Allegations Here Because Plaintiff's Class Definition Fails to Show that Each Member Would Have Injury-in-Fact Standing**.

As noted, the Complaint asserts claims on behalf of a putative class. *See* Compl. at ¶ 46. Standing requirements apply with equal force to class actions as to individual litigants. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("any analysis of class certification must begin with the issue of standing"). Under the Rules Enabling Act, procedural rules like Rule 23 "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). This means that a class cannot contain members who would be unable to meet Article III's standing requirements on their own. *See O'Shea v. Epson Am., Inc.,* No. CV 09-8063 PSG CWX, 2011 WL 4352458, at *8 (C.D. Cal. Sept. 19, 2011), *aff'd sub nom. Rogers v. Epson Am., Inc.*, No. 11-57016, 2016 WL 1566698 (9th Cir. Apr. 19, 2016) ("a federal class action [may not] proceed where class members lack Article III standing"). Indeed, as one district court recently noted in the course of denying certification, and citing *Spokeo,* in *Sandoval v. Pharmacare US, Inc.*, No. 15-cv-

0738-H-JLB (S.D. Cal. June 10, 2016), a class cannot include members who have suffered no cognizable injury.

For this reason, the class definition must – without the need for additional inquiry – demonstrate that each class member has standing. *See, e.g., Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of certification of a plaintiff class because the proposed definition was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief"); *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions").

Thus, assuming that Plaintiff can allege an injury sufficient to meet the requirements of *Spokeo* – which he cannot (*see* Part III.A above) – the Supreme Court's decision emphasizes why class certification is unmanageable in this case and prohibits a finding of commonality or predominance. The individual standing inquiry into whether the January 28, 2015 text message caused some concrete and particularized harm to class members must be capable of resolution in the same way for each putative class member. And yet simply populating a class with persons sent the single text message by HOA's vendors and who allegedly did not

provide prior consent will not adequately identify class members with Article III standing. For example, should a privacy violation be the alleged injury-in-fact, it would need to be determined (of those who claim consent had been withdrawn) who shared the same privacy violation Plaintiff alleges by investigating on an individual basis who received and/or saw the alleged text message. (Alleged recipients may have been out of range of text service, or had powered off their smartphones, or received no "ding" or other notification of the text message, or may not have glanced down at their smartphones when the text would have appeared in the recipient's visible text message feed).

If a complaint shows that individual questions will necessarily predominate, the court can and should strike the class allegations. *See Rehberger v. Honeywell Int'l, Inc.*, No. 3:11-0085, 2011 WL 780681, at *8 (M.D. Tenn. Feb. 28, 2011) (citing *Thornton v. State Farm Mut. Auto Ins. Co.,* No. 1:06–cv–00018, 2006 U.S. Dist. LEXIS 83972, at *15–16 (N.D. Ohio Nov. 17, 2006)) (striking class allegations because claims would require individualized inquiry). *See also Shein v. Canon U.S.A., Inc.,* No. CV 08–07323, 2009 WL 3109721, at *8 (C.D. Cal. Sept. 22, 2009) (noting that a pre-discovery motion to strike class allegations is appropriate if "any questions of law are clear and undisputed, and ... under no set of circumstances could the claim succeed"); *Muehlbauer v. GMC,* 431 F.Supp.2d

at 870–72 (noting that, pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D), a court can review class allegations before discovery and strike them if they are "facially deficient and no amount of discovery can save them"); *Clark v. McDonald's Corp.,* 213 F.R.D. at 205 n. 3 ("A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *John v. Nat'l Sec. Fire & Cas. Co.,* 501 F.3d at 445 ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.").

Given *Spokeo*'s directive, it is clear from the face of the Complaint that Plaintiff's proposed class is not certifiable, and the class allegations should be stricken. Regardless of what Plaintiff himself claims his own injury-in-fact to be, it would take individualized inquiries to know whether any putative class member has an injury-in-fact – a concrete and particularized injury – to allege from the receipt of the January 28, 2015, text message. Thus, the class allegations are facially deficient.

2. **The Court Should Also Strike Plaintiff's Class Allegations Because The Defined Class is an Improper Fail-Safe Class**.

Moreover, and as a separate rationale for striking the class allegations, here the class definition proposes to certify an improper fail-safe class by only including

recipients of the text message who can prove-up a lack of prior express consent. *See* Compl., ¶ 46 (defining class to include "[a]ll persons in the United States of America (including its Territories and the District of Columbia) who were sent, ***without prior express written consent***, to their cellular telephone numbers, at least one text message on or about January 28, 2015 which marketed and/or advertised the Hooters' mClub, or Hooters services, products, goods (the "Class")"). This class would only contain those persons who received the January 28, 2015 text message but who were unable to meet the statutory requirement of showing lack of consent for the autodialed call (if the calls were autodialed, as Plaintiff alleges).

This proposed class membership (persons who received a message without providing prior express consent) is thus "fail safe" – a class whose membership is defined by the merits of individual members' legal claims. Membership is not ascertainable prior to a finding of liability in the plaintiff's favor. Indeed, "[a] 'fail safe' class definition is improper because a class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012) (*citing Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (affirming denial of class certification because the class "only included those who are 'entitled to relief'" and this was an "improper fail-safe class that shields the

putative class members from receiving an adverse judgment")). *See also Hurt v. Shelby Cnty. Bd. of Educ.,* 2014 WL 4269113, at *8 (N.D. Ala. Aug. 21, 2014) (denying certification of a fail-safe class, and noting, "[a] fail-safe class is 'a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.' ").

When it is clear from the face of the Complaint that the proposed class definition is inadequate and fail-safe, class allegations should be stricken. Various courts have done exactly that when faced with a TCPA-class that defines membership based on lack of prior consent. *See , e.g., Sauter,* 2014 WL 1814076, at *8-9 (striking class allegations after finding that defining a TCPA class to include "only those individuals who did not expressly consent" to the receipt of calls created "a prohibited fail-safe class"); *see also Boyer v. Diversified Consultants, Inc.,* 306 F.R.D. 536, 540 (E.D. Mich. 2015) (striking class allegations when proposed class membership was fail-safe because it only consisted "of those people who did not provide prior express consent to be contacted by defendants"); *Taylor v. Universal Auto Grp. I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) ("this Court, however, is persuaded that inclusion of the 'without prior consent' language in the

national classes definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability.").

## IV.  CONCLUSION

For the foregoing reasons, HOA respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint in its entirety because Plaintiff lacks standing to proceed.  In the alternative, HOA respectfully requests that the Court strike the class allegations from Plaintiff's Complaint.  And should Plaintiff be permitted to amend (even though he declined the opportunity when HOA offered), the Court should make clear that Plaintiff will not be permitted to proceed unless and until he can articulate a concrete and particularized injury-in-fact stemming from the alleged unlawful conduct, and that he will not be permitted to proceed on behalf of a putative class unless and until he can define a class membership that does not so clearly fail on the face of the Complaint to meet certification requirements.

Respectfully submitted, this 30th day of June 2016.


*[Signatures of counsel appear on the following page.]*

s/Alisa P. Cleek
Alisa P. Cleek
(Georgia Bar No. 581063)

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(678) 426-4624 Telephone
(770) 434-7376 Facsimile
acleek@taylorenglish.com

Becca J. Wahlquist
(admitted *pro hac vice*)

SNELL & WILMER L.L.P.
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, California 90071
(213) 929-2500 Telephone
(213) 929-2525 Facsimile
bwahlquist@swlaw.com
mbute@swlaw.com

Attorneys for Defendant Hooters of America, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL ETZEL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | CIVIL ACTION FILE NO. 1:15-cv-01055-LMM |
| v. | |
| HOOTERS OF AMERICA, LLC, | |
| Defendant. | |

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that this memorandum complies with the font and point selections approved by the Court in Local Rule 5.1. This Memorandum of Law in Support of Defendant's Motion to Dismiss has been prepared in Times New Roman font, 14 point.

Respectfully submitted, this 30th day of June 2016.

s/Alisa P. Cleek
Alisa P. Cleek
Georgia Bar No. 581063

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL ETZEL, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

HOOTERS OF AMERICA, LLC,

    Defendant.

CIVIL ACTION FILE NO.
1:15-cv-01055-LMM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2016, I electronically filed the foregoing

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO
STRIKE PLAINTIFF'S CLASS ALLEGATIONS AND MEMORANDUM
OF LAW IN SUPPORT** with the Clerk of Court using the CM/ECF system,

which will automatically send notification of such filing to the following:

W. Pitts Carr
Alex D. Weatherby
Nicholas P. Panayotopoulos
David Ghattas
Nancy Foster Rigby

                                  s/Alisa P. Cleek
                                  Alisa P. Cleek
                                  Georgia Bar No. 581063

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(678) 426-4624 Telephone
(770) 434-7376 Facsimile
acleek@taylorenglish.com

Attorneys for Defendant Hooters of America, LLC