IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL ETZEL,                              :
                                            :
                                            :
        Plaintiff,                          :
                                            :
v.                                          :       CIVIL ACTION NO.
                                            :       1:15-CV-01055-LMM
                                            :
HOOTERS OF AMERICA, LLC,                    :
                                            :
                                            :
        Defendant.                          :

## ORDER

This case comes before the Court on Defendant Hooters of America, LLC's

Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative,

Motion to Strike Plaintiff's Class Allegations [33]. After a review of the record and

due consideration, the Court enters the following Order:

## I. Factual Background[1]

Defendant Hooters of America, LLC advertised in its restaurants for

customers to text to "36832" (the "Short Code") to obtain periodic offers,

discounts, and updates on contests and promotions from Hooters. Persons who

texted the Short Code were automatically enrolled in Hooters mClub and received

---

[1] Unless otherwise indicated, the following facts are taken from Plaintiff's
Complaint, Dkt. No. [1], solely for the purposes of this Order, and are construed
in Plaintiff's favor consistent with the Court's task on a Motion to Dismiss.

periodic advertising text messages from Defendant via an automatic telephone dialing system ("ATDS"). Plaintiff Michael Etzel opted-in to the Short Code, but well before January 28, 2015, expressly opted-out by sending a "STOP" message to the Short Code. A separate company, State of Text, received the text messages sent to the Short Code by Defendant's customers and maintained the database of customers' cellular phone numbers to be used in future Hooters ATDS advertising text message campaigns. State of Text also kept opt-in and opt-out dates for these customers.

Effective October 16, 2013, the Federal Communications Commission ("FCC") ruled that automated calls (such as text messages) could not be sent without the "prior express written consent" of the recipient to receive the text message advertisement. Defendant then directed State of Text to send a message to the entire database of cellular telephone numbers requesting express written consent to receive future text messages. Thousands of people did not give their consent to receive future text message from Defendant. State of Text noted these people as "opt-outs" in its database.

On or about December 23, 2014, Defendant requested the database of cellular telephone numbers from State of Text. State of Text requested that Defendant clarify whether it intended to send text messages to these numbers, as it could result in a violation of the Telephone Consumer Protection Act ("TCPA") if the opt-outs were included. Upon receiving assurance from Hooters that it would not text these numbers, State of Text sent a database with the area code

2

removed from the numbers but including the opt-in and opt-out dates.
Defendant then requested the complete numbers, and once again assured State of
Text that it would not text these numbers. State of Text then supplied Defendant
with another database that included the complete telephone numbers without the
opt-in and opt-out dates.

On December 31, 2014, Defendant terminated its contract with State of
Text and engaged SilverPop as its ATDS text message provider. Then, on or about
January 28, 2015, Defendant, through SilverPop, sent a text message to the
numbers in the database, including Plaintiff and thousands of others who had not
provided their express written consent to receive such text messages. On January
29, Plaintiff sent an email to Defendant explaining that he had received a text
message despite opting out. That same day, Defendant replied that their previous
partners had provided them with an erroneous list of subscribers and their new
partner had sent out the list. Defendant said it would remove Plaintiff from the
list and apologized for the inconvenience.

Plaintiff has brought a claim against Defendant under the TCPA, 47 U.S.C.
§ 227. Plaintiff also seeks to certify a class under Rule 23 of the Federal Rules of
Civil Procedure. Defendant has moved to dismiss Plaintiff's TCPA claim because
the Court does not have subject matter jurisdiction, or in the alternative, to strike
Plaintiff's class allegations.

## II. Discussion

### A. Subject Matter Jurisdiction

Plaintiff argues that Defendant violated the TCPA by sending thousands of unsolicited text message advertisements on or about January 28, 2015. Defendant argues that receiving a single text message does not constitute an injury-in-fact sufficient to satisfy Article III standing.

### 1. Legal standard

Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When a defendant challenges a plaintiff's standing by bringing a Rule 12(b)(1) motion, the plaintiff bears the burden to establish that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiff must satisfy three elements to establish Article III standing:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Fla. Family Policy Council v. Freeman, 561 F.3d 1246, 1253 (11th Cir. 2009) (quoting Lujan, 504 U.S. at 560-61). "All three elements are an 'irreducible constitutional minimum,' and failure to show any one results in a failure to show

standing." <u>Koziara v. City of Casselberry</u>, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting <u>Lujan</u>, 504 U.S. at 560).

An attack on subject matter jurisdiction can either be a "facial attack" or a "factual attack." <u>See</u> <u>Scarfo v. Ginsberg</u>, 175 F.3d 957, 960 (11th Cir. 1999) (citing <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990)).

> Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for the purposes of the motion. Factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

<u>Id.</u> (citations and quotation marks omitted). The Court finds that Defendant's Motion to Dismiss is a facial attack and therefore the allegations in Plaintiff's Complaint are taken as true for the purposes of the motion. <u>See</u> Dkt. No. [34] at 6.

    2. Injury-in-fact

Defendant argues that "the Complaint is devoid of any allegation of an injury-in-fact that is both concrete and particularized." Dkt. No. [33] at 11. Instead, according to Defendant, "Plaintiff asserts a bare procedural violation of the TCPA—that he received a lone text message after the withdrawal of consent," and has merely stated a "single, vague, generalized allegation that the text message 'injured Plaintiff and other members of the class[.]'" <u>Id.</u> at 11 (quoting Dkt. No. [1] ¶ 45).

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S. Ct. 1540, 1548 (2016). An injury is concrete when it actually exists. Id. But, an injury does not have to be tangible to be concrete. Id. at 1549. While Congress may not entirely abrogate the injury requirement, it may statutorily define injuries and chains of causation that would not have existed absent the statute. Id. Specifically, Congress may, by statute, transform a previously non-concrete injury into one that is concrete and therefore sufficient to confer standing. Id.

With respect to the TCPA, the Eleventh Circuit had held that Congress intended to create injury where the statute was violated. Palm Beach Golf Ctr.-Boca, Inc. v. Jon G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1252 (11th Cir. 2015). This means that if the plaintiff has been personally affected by the conduct that violates the statute, standing exists. Id.[2] In Palm Beach, the Eleventh Circuit found standing in a junk-fax scenario under the TCPA, despite the fact that there was no evidence that anyone ever printed or saw the junk faxes at issue. Id. It was enough that the junk faxes made the fax line unavailable for legitimate purposes. Id. In Rogers, the court used similar reasoning to find standing in a TCPA claim regarding unwanted phone calls to cell phone numbers. Rogers v. Capital One

---

[2] Spokeo did not diminish the holding of Palm Beach. To be sure, merely asserting a "bare procedural violation, divorced from any concrete harm," will not satisfy the concreteness requirement. Spokeo, 136 S. Ct. at 1549. However, "[t]his observation has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers." Mey v. Got Warranty, Inc., 2016 WL 3645195, at *2 (N.D. W.Va.  June 30, 2016).

Bank (USA), N.A., 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016). Specifically, the Court reasoned that (1) "the Eleventh Circuit has held [that] a violation of the TCPA is a concrete injury," and (2) the plaintiffs have also "suffered particularized injuries because their cell phone lines were unavailable for legitimate use during unwanted calls." Id.

Defendant argues that Rogers is distinguishable because here "Plaintiff did not allege (because he cannot) that the receipt of the text message impaired the functionality of his cell phone or rendered his cell phone unavailable to perform other functions." Dkt. No. [36] at 5. However, even if unwanted texts do not impair the functionality of phones, they do create other injuries. Courts have articulated several injuries caused by unwanted phone calls in the TCPA context, including (1) forcing the consumer to incur charges, (2) depleting a cell phone's battery, (3) invasion of privacy, (4) intrusion upon and occupation of the capacity of the cell phone, and (5) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction. Mey v. Got Warranty, Inc., 2016 WL 3645195, at *3 (N.D. W. Va. June 30, 2016).

Many of these injuries also apply in the text message context.[3] For example, even if Plaintiff did not incur charges because of the unwanted text,

---

[3] Moreover, text messages are considered "calls" for purposes of the TCPA. See 2015 TCPA Order, 30 FCC Rcd. 7961, 8016 (July 10, 2015) (discussing "the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls" and "reiterat[ing] that they are"). See also 2003 TCPA Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (noting that 47 U.S.C. § 227(b)(1) "encompasses both voice calls and text calls to wireless numbers").

surely Plaintiff's battery was depleted and time was wasted while reading and responding to the text. Moreover, Plaintiff expressly alleged in the Complaint that he suffered "an invasion of [] privacy."[4] Dkt. No. [1] ¶ 38. Finally, even if the unwanted text did not impair the functionality of Plaintiff's cell phone, the text still intruded upon and occupied the capacity of Plaintiff's cell phone. Therefore, a caller's sending of text messages in violation of the TCPA constitutes an injury-in-fact to the recipient so as to provide Article III standing.

Defendant also argues that Rogers is distinguishable because it involved over forty phone calls to a cell phone, as opposed to a *single* text message here. Injuries that occur from a single call or text (whether from depleted battery life, wasted time, or annoyance) would be *de minimis*, according to Defendant. However, the language of the TCPA is clear that a violation can occur from a single call. See 47 U.S.C. § 227(b)(1) ("It shall be unlawful for any person . . . to make any *call* . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . .") (emphasis added).[5] Furthermore, while the cause of action for 47 U.S.C. § 227(c) is limited to "[a] person who has received more than

---

[4] The cases Defendant cites for the proposition that privacy-related injuries do not satisfy the Article III concrete injury requirement all come from outside the TCPA context and are therefore not as persuasive. Furthermore, even if they were persuasive, Plaintiff's other injuries articulated *supra* are enough to constitute an injury-in-fact for purposes of Article III standing.

[5] The section in the 2015 TCPA Order stating that "liability should not attach for that first call" does not apply here because it is limited to "where a caller believes he has consent to make a call and does not discover that a wireless number has been *reassigned*." 30 FCC Rcd. at 8007 (emphasis added).

one telephone call," the cause of action for 47 U.S.C. § 227(b) (the section applicable to Plaintiff's claim) does not have such a limitation. 47 U.S.C. § 227(c)(5). See also 47 U.S.C. § 227(b)(3). Had Congress intended to limit the cause of action for § 227(b) to multiple calls, surely it would have expressly done so as it did for § 227(c). See DIRECTV, Inc. v. Brown, 371 F.3d 814, 818 (11th Cir. 2004) ("[W]hen Congress uses different language in similar sections, it intends different meanings. The plain meaning of the statute, therefore, controls.") (internal quotation marks and citations omitted).

While it is ultimately up to courts to determine Article III standing issues, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." Spokeo, 136 S. Ct. at 1549. In fact, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 578 (1992)). Therefore, in light of the plain language of the TCPA and Congress's role in elevating injuries to legally cognizable status, sending a single text message in violation of the TCPA constitutes an injury-in-fact to the recipient so as to provide Article III standing.[6] Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

---

[6] See also Leung v. XPO Logistics, Inc., 164 F. Supp. 3d 1032, 1034-35, 1040 (N.D. Ill. 2015) (finding a single call received by plaintiff constituted an injury-in-fact to confer Article III standing based on "lost-time" and "aggravation/lost-privacy").

B.  Motion to Strike Class Allegations

Defendant argues in the alternative that the Court should strike Plaintiff's class allegations because: (1) individual questions will predominate, and (2) the defined class is an improper fail-safe class.

### 1.  Legal standard

A court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. FED. R. CIV. P. 12(f). "However, striking class allegations at the pleading stage is the functional equivalent of denying class certification." Arkin v. Innocutis Holdings, LLC, 2016 WL 3042483, at *7 (M.D. Fla. May 26, 2016). "While it is sometimes possible to decide the propriety of class certification from the face of the complaint . . . the determination usually should be predicated on more information than the complaint itself affords." Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 F. App'x 930, 934 (11th Cir. 2016) (internal citations omitted).[7] A court should not determine the appropriateness of class action treatment at the motion to dismiss stage "where the class certification issue cannot be readily resolved by the complaint alone." Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008).

### 2.  Individual questions predominate

---

[7] See also Abdallah v. Coca-Cola Co., 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999) (noting defendant's argument that "no matter what forms Plaintiff's class claims take, they are not maintainable in a class action," and responding that "the shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form").

Defendant argues that the class definition fails to show that each member would have an injury-in-fact to support standing. However, the Supreme Court has said that "named plaintiffs who represent a class must allege and show that they personally have been injured, *not* that injury has been suffered by other, unidentified members of the class to which they belong." Spokeo v. Robins, ___ U.S. ___, 136 S. Ct. 1540, 1547 n.6 (2016) (internal quotations omitted) (emphasis added). Furthermore, once a trial court determines that the named plaintiffs have standing, it scrutinizes the relationship between the named plaintiffs and the putative class under Rule 23, not Article III standing. Gilchrist v. Bolger, 89 F.R.D. 402, 407 (S.D. Ga. 1981).[8] In fact, if a court "properly applies Rule 23, then the certified class must necessarily have standing as an entity." Vuyanich v. Republic Nat. Bank of Dallas, 82 F.R.D. 420, 428 (N.D. Tex. 1979). Because Plaintiff does not need to show that each member of the putative class would have an injury-in-fact, Plaintiff's class allegation does not fail on this basis.

Even if the Court were to look independently at the unnamed, putative class members' standing as part of its Rule 23 analysis,[9] striking Plaintiff's class

---

[8] In arguing that Plaintiff's class definition must show that each member would have an injury-in-fact, Defendant quotes the Eleventh Circuit that "any analysis of class certification must begin with the issue of standing." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987). However, the Eleventh Circuit was referring to "whether the *named* plaintiffs have individual standing." Id. (emphasis added).

[9] See 7AA CHARLES ALAN WRIGHT ET AL, FED. PRAC. & PROC. CIV. § 1785.1 (3d ed. 2016) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury

allegations on this issue would not be appropriate. Plaintiff defines the proposed class as follows:

> All persons in the United States of America (including its Territories and the District of Columbia) who were sent, without prior express written consent, to their cellular telephone numbers, at least one text message on or about January 28, 2015 which marketed and/or advertised the Hooters' mClub, or Hooters services, products, or goods . . . .

Dkt. No. [1] ¶ 46.  Defendant argues that if the alleged injury-in-fact is a privacy violation, the Court would need to ascertain which members actually received and saw the text message to determine which members suffered injury, and thus had standing. According to Defendants, this determination would cause individual questions to necessarily predominate.

However, even if individual questions do necessarily predominate regarding which members suffered an invasion of privacy injury, there were other injuries suffered by the class members. For example, the unwanted text would have intruded upon the capacity of the class members' cell phones who received the text, regardless of whether the members actually read it.[10] See Mey, 2016 WL

---

requiring court intervention."); Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006) ("The class must therefore be defined in such a way that anyone within it would have standing.").

[10] Admittedly, there may have been some who were sent the text but never received it, and therefore were not injured by the unwanted text occupying their phone. However, this issue could be resolved by simply limiting the class definition to those who received the text. See Scheduling Order and Case Management Order No. 1, Dkt. No. [31] at 3 ("The Plaintiff shall be permitted to amend its class definition, without leave of Court, until the filing of the motion for class certification.").

tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels . . . . Indeed, the TCPA can be viewed as merely applying this common law tort to a 21st-century form of personal property . . . ."). And, determining who received a text does not require individual inquiries because Plaintiff alleges that Defendant "has centralized, ascertainable data regarding the cell numbers to which the January 28, 2015 texts were successfully sent." Dkt. No. [34] at 22.

Aside from the injury-in-fact determination, Defendant also notes that some courts have found that TCPA classes based upon consent revocation fail to satisfy the predominance requirement under Rule 23(b)(3) because "determin[ing] whether each potential class member did in fact revoke his or her prior consent" would force the court "to conduct class-member-specific inquiries for each individual." Wolfkiel v. Intersections Insurance Services Inc., 303 F.R.D. 287, 293 (N.D. Ill. 2014). However, here Plaintiff alleges that Defendant has a centralized, ascertainable list of cell numbers to which the January 28, 2015 texts were sent, along with opt-out dates for those same numbers. Dkt. No. [1] ¶ 31, Dkt. No. [34] at 22. This should reduce the need for individual inquiries. See Wolfkiel, 303 F.R.D. at 294 ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party.").

Lastly, even if individual questions predominated here, that would only preclude a class based upon Rule 23(b)(3).[11] A class would still be feasible under Rule 23(b)(1) and (2).[12]  Therefore, striking Plaintiff's class allegations would not be appropriate at this time because "the class certification issue cannot be readily resolved by the complaint alone." Mills, 511 F.3d at 1309.

        3.  Fail-safe class

As a separate rationale for striking Plaintiff's class allegations, Defendant argues that the proposed class—persons who received a message without providing prior express consent—would constitute an improper fail-safe class because membership is defined by the merits of individual members' legal claims. Some circuits have deemed fail-safe classes "improper" in part "because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment" in violation of *res judicata*. Messner v.

---

[11] See FED. R. CIV. P. 23(b)(3) (requiring "that the questions of law or fact common to class members predominate over any questions affecting only individual members").

[12] See Mills, 511 F.3d at 1308-09 (noting that "a lack of predominance under Rule 23(b)(3) does not automatically bar class certification because the putative class representative can still attempt to satisfy the requirements of Rule 23(a) and either Rule 23(b)(1) or (b)(2)"). See also Dkt. No. [1] ¶ 46 ("Plaintiff brings this action pursuant to Rule 23(a), *23(b)(1)*, *23(b)(2)*, and 23(b)(3) . . . .") (emphasis added). Because Defendant did not specifically address why Plaintiff's class could not be certified under either 23(b)(1) or (b)(2), the Court will not decide the issue at such an early stage in the litigation.

Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012).[13] Other circuits have explicitly "reject[ed] the fail-safe class prohibition." In re Rodriguez, 695 F.3d 360, 370 (5th Cir. 2012).

The issue of fail-safe classes has "not yet [been] addressed by the Eleventh Circuit." Alhassid v Bank of America, N.A., 307 F.R.D. 684, 693 (S.D. Fla. 2015). However, lower courts in the Eleventh Circuit have cautioned against certifying fail-safe classes.[14] In Hurt, the court noted that in addition to the circumvention of *res judicata*, there is a "logical" problem with fail-safe classes in that "the class definition is essentially circular. It defines its members on the presumption that such members have viable claims against the Defendant. So, the class definition assumes what it ostensibly seeks to prove." Hurt v. Shelby Cty. Bd. of Educ., 2014 WL 4269113, at *8 (N.D. Ala. Aug. 21, 2014). Moreover, "a fail safe class is unmanageable because the members of the class could only be known after a determination of liability." Id.

Plaintiff defines the proposed class as follows:

---

[13] See also Randleman v. Fidelity Nat'l Tire Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011) (fail-safe definition was one of two grounds for decertifying class).

[14] See Alhassid, 307 F.R.D. at 693 (noting that "case law within this Circuit and persuasive Circuit-level authority indicates that a class cannot be certified where the proposed class definition employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability"); Cox v. Community Loans of America, Inc., 2014 WL 1216511, at *14 (M.D. Ga. Mar. 24, 2014) ("To the extent that Plaintiffs' definition of the class may be construed as an impermissible 'fail-safe' class, the Court finds it appropriate to clarify the definition of the class.").

> All persons in the United States of America (including its Territories and the District of Columbia) who were sent, *without prior express written consent*, to their cellular telephone numbers, at least one text message on or about January 28, 2015 which marketed and/or advertised the Hooters' mClub, or Hooters services, products, or goods . . . .

Dkt. No. [1] ¶ 46 (emphasis added). Defendant argues that by defining the class as those who were sent text messages "without prior express written consent," Plaintiff creates a fail-safe class because "[m]embership is not ascertainable prior to a finding of liability in the plaintiff's favor." Dkt. No. [33] at 20.

Courts are divided on whether defining a TCPA class based on lack of consent creates a fail-safe class. Compare Wolfkiel v. Intersections Ins. Servs. Inc., 2014 WL 866979, at *6 (N.D. Ill. Mar. 5, 2014) (concluding that it was "not yet persuaded that the No-Consent Class qualifie[d] as a fail-safe class."), with Olney v. Job.com, Inc., 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (finding fail-safe class and allowing plaintiff to remove the consent language from the definition to avoid the fail-safe issue), and Sauter v. CVS Pharmacy, Inc., 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) (finding that both of plaintiff's consent sub-classes were fail safe and granting defendant's motion to strike while allowing plaintiff to amend the complaint).

However, at this time the Court does not need to decide whether having the consent language creates a fail-safe class. This is because, unlike the class definitions in Olney and Sauter, inclusion in Plaintiff's class does not require

16

meeting all of the elements of a TCPA violation.[15] 47 U.S.C. § 227(b)(1) says in part:

> It shall be unlawful for any person within the United States . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system or an artificial or prerecorded voice* . . . (iii) to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1) (emphasis added).[16] Unlike the Olney and Sauter class definitions, Plaintiff's class definition does not include language about automated telephone dialing systems or artificial or prerecorded voices.[17] And so, those who fall within Plaintiff's class definition would still need to show that Defendant used either an automated dialing system or an artificial or prerecorded voice for

---

[15] Technically, "[e]xpress consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." Taylor v. Universal Auto Group I, Inc., 2014 WL 6654270, at *5 (W.D. Wash. Nov. 24, 2014).

[16] Plaintiff did not identify the specific provision of the TCPA upon which he based his claim. See Dkt. No. [1] ¶ 56 ("Defendant engaged in acts . . . that violate[] the TCPA, including but not limited to violation of subsection (b) of the TCPA."). The Court assumes 47 U.S.C. § 227(b)(1)(A)(iii) is the provision upon which Plaintiff relies because it is the only provision in Section 227(b)(1) of the TCPA that references cell phones.

[17] See Olney, 2013 WL 5476813, at *10 (noting that class was defined as "[a]ll persons . . . who received any telephone call . . . made through the use of any automated telephone dialing system or an artificial or prerecorded voice . . . ."); Sauter, 2014 WL 1814076, at *8 (noting that class was defined as "[a]ll persons . . . who received any telephone call/s . . . made through the use of any automated telephone dialing system . . . ."). See also Taylor, 2014 WL 6654270, at *22 (allowing plaintiff to redefine fail-safe consent class that also included within the definition "[a]ll persons . . . who received a call on their cellular telephone line with a prerecorded message").

Defendant to be liable. Because membership in Plaintiff's class is not defined by the merits of individual members' legal claims, the Court does not find at this stage that Plaintiff's proposed class is fail safe. Defendant's Motion to Strike Plaintiff's Class Allegations is **DENIED**.[18]

## III. Conclusion

Defendant's Motion to Dismiss Plaintiff's Complaint [33] and Motion to Strike Plaintiff's Class Allegations [33] are both **DENIED**.

**IT IS SO ORDERED** this 15th day of November, 2016.

Leigh Martin May
United States District Judge

_____

[18] Even if Plaintiff's class definition was defective in some way, Defendant's Motion to Strike Plaintiff's Class Allegations would be denied as premature because Plaintiff is entitled to amend his class definition pursuant to the Scheduling Order. See Scheduling Order and Case Management Order No. 1, Dkt. No. [31] at 3 ("The Plaintiff shall be permitted to amend its class definition, without leave of Court, until the filing of the motion for class certification.").